

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LYNNE BLOCH, HELEN BLOCH, and NATHAN BLOCH, | ) ) ) |
| Plaintiffs, | ) ) 06 C 4472 ) |
| v. | ) ) Judge Ronald A. Guzmán |
| EDWARD FRISCHHOLZ, and SHORELINE TOWERS CONDOMINIUM ASSOCIATION, an Illinois not-for-profit corporation, WOLIN-LEVIN, INC., an Illinois corporation, SHARON SCHINGOETHE, and BELINDA COTTON-COLLINS, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Lynne, Helen and Nathan Bloch have sued Edward Frischholz, Sharon Schingoethe, Belinda Cotton-Collins, Wolin-Levin, Inc. and the Shoreline Towers Condominium Association for their alleged violations of the Fair Housing Act, 42 U.S.C. § 3617, and the Illinois Condominium Act, 765 Ill. Comp. Stat. 605/18.4. Defendants have filed motions pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and (6) to dismiss all of the claims asserted against them. For the reasons set forth below, the motions are granted in part and denied in part.

### Facts

Defendant Shoreline Towers is a condominium association located at 6301 North Sheridan Road, Chicago, Illinois, 60660. (Am. Compl. ¶ 8.)[1] Defendant Frischholz owns a unit in Shoreline

---

[1] Defendants Shoreline Towers and Frischholz moved to dismiss the initial complaint. While that motion was pending, plaintiffs filed an amended complaint, adding Wolin-Levin, Schingoethe and Cotton-Collins as defendants. Because the allegations in the two complaints with respect to Shoreline Towers and Frischholz are not materially different, the Court only cites the amended complaint.

Towers and serves as the president of its board of directors ("board"). (*Id.* ¶¶ 6-7.) Defendant Wolin-Levin is the company Shoreline Towers has hired to manage the property. (*Id.* ¶ 12.) Defendant Schingoethe is employed by Wolin-Levin as the Shoreline Towers property supervisor and, in that capacity, supervises the Shoreline Towers staff. (*Id.* ¶¶ 9-13.) One of the people Schingoethe supervises is defendant Cotton-Collins, who is the Shoreline Towers property manager. (*Id.* ¶¶ 11, 14.)

Plaintiff Lynne Bloch, who is Jewish, owns and lives in Shoreline Towers units 12R, 12K, and 12L. (*Id.* ¶ 2.) Lynne is the mother of plaintiffs Helen and Nathan Bloch, who are also Jewish and also reside, in whole or in part, in units 12R, 12K, and 12L. (*Id.* ¶¶ 3-4.)

About a year before filing this suit, plaintiffs filed another suit against Frischholz and Shoreline Towers alleging, among other things, that they had discriminated against plaintiffs because of their religion in violation of the Fair Housing Act ("FHA"). (*See* Shoreline Towers & Frischholz's Mot. Dismiss, Ex. A, *Bloch v. Frischholz*, No. 05 C 5379, Compl.) On August 7, 2006, Judge Lindberg granted defendants' motion for summary judgment as to the federal claims and dismissed the state law claims without prejudice. (*Id.*, Ex. C, 8/7/06 Min. Order.)

In January 2006, while the first federal suit was pending, Lynne decided to rent the Shoreline Towers' hospitality room for a synagogue event. (Am. Compl. ¶¶ 19, 22.) She did so by following the customary procedure, which was telling the property manager of the dates of the event and giving her a check for the rental. (*Id.* ¶ 19.) Shoreline Towers responded by telling Lynne that the rental request had to be made in writing. (*Id.* ¶ 20.)

On February 2, 2006, Lynne submitted a written request. (*Id.* ¶ 22.) On February 6, 2006, she received a letter from defendants' attorney approving the rental but setting forth a variety of conditions. (*Id.* ¶ 25.)

2

On February 10 and 11, 2006, Lynne held her event in the hospitality room. (*Id.* ¶ 26.) On February 21, 2006, she received a letter that said she had violated several of the association's rules during her event by:

> (1) not being present at all times while [her] guests were using the Hospitality Room; (2) failing to have each and every one of [her] guests sign-in and identify themselves to security personnel; (3) harassing security staff to leave their post to address personal concerns of guests; . . . (4) repeatedly blocking a resident's doorway in violation of City of Chicago Fire Codes [and] . . . . vandaliz[ing] the religious adornment of a unit, [in] violation of the Association Rules and Regulations . . . .

(*See* Shoreline Towers & Frischholz's Mot. Dismiss, Ex. J, Letter to L. Bloch from Hartwell of 2/21/06.) A notice ordering Lynne to appear at an association board hearing on March 2, 2006 was attached to the letter. (*Id.*)

Ultimately, Lynne was found liable for violating the association's rules, and on August 1, 2006, she was fined $150.00 and charged $1561.00 in legal fees. (Am. Compl. ¶ 37.) Plaintiffs claim that defendants cited and fined Lynne in retaliation for the religious discrimination suit they had previously filed.

## Discussion

### Subject Matter Jurisdiction

There are two kinds of Rule 12(b)(1) motions: those that attack the sufficiency of the jurisdictional allegations and those that attack the factual basis for jurisdiction. Facial attacks are subject to the same standard as motions pursuant to Rule 12(b)(6) motions; that is, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2002). However, in factual attacks, like this one, the Court may consider affidavits and other evidence in

3

deciding the motion. *Id.* In either case, the burden of proving that jurisdiction exists rests with the plaintiff. *Id.*

Defendants claim that the Court lacks subject matter jurisdiction over Helen and Nathan's claims because they have no standing to pursue them. Standing to sue under the FHA is co-extensive with Article III standing. *See Gorski v. Troy*, 929 F.2d 1183, 1188 (7th Cir. 1991) ("[T]he only requirement for standing to sue under the FHA is the Art. III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered 'a distinct and palpable injury.'" (quotation omitted)). Thus, to defeat this motion, Helen and Nathan must show that defendants' conduct caused them an injury in fact that is fairly traceable to defendants' conduct and can be redressed by a decision in their favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Defendants say Helen and Nathan have suffered no injury because the record shows that Lynne – and only Lynne – rented the hospitality room, was cited for violating the association's rules, was ordered to appear at the board hearing, was assessed a fine and legal fees after the hearing, and paid the fine and fees. (*See* Shoreline Towers & Frischholz's Reply Supp. Mot. Dismiss, Ex. B, Pls.' Resp. Req. Admit ¶¶ 6, 9, 10-18.)

Helen and Nathan do not dispute those facts, but they contend that Helen's current and Nathan's future ownership interests in unit 12R gives them standing to sue. Helen and Nathan have not, however, offered any facts that suggest the fines, which Lynne admits she paid in full (*see id.* ¶ 14), diminish the value of their interests in unit 12R or otherwise injure them in any way. Thus, the mere fact that Helen and Nathan do or will have an ownership interest in one of the units does not give them standing for their FHA claim.

Alternatively, Helen and Nathan argue that they have standing because defendants' harassment of their mother caused them to suffer emotional distress. In some circumstances, emotional distress suffered by a child as a result of conduct directed toward their parent can confer Article III standing. Such was the case in *Whisby-Myers v. Kiekenapp*, 293 F. Supp. 2d 845 (N.D. Ill. 2003). The plaintiffs in that case were the only African-American family on a certain block in Calumet City. *Id.* at 848. As Mrs. Whisby-Meyers drove down the street near her home, the defendant threw a bomb at her car and, after the explosion, ran out of his house and yelled threats and racial epithets at her. *Id.* at 848-49. When Mrs. Whisby-Meyers, her husband and their children sued defendant for, among other things, violating the FHA, defendant argued that her husband and children lacked standing to sue. *Id.* at 852-853. The court disagreed:

> All of the plaintiffs plainly have standing to sue under . . . the Fair Housing Act. They all claim to have suffered an injury resulting from Kiekenapp's alleged conduct that prevented them from using their property to its full extent and caused them humiliation, embarrassment, emotional distress, and financial loss. . . . [Moreover,] knowledge that someone has physically attacked one's spouse or parent due to their race, in an effort to drive them out of the neighborhood, quite plainly gives the other family members standing to sue . . . , as a reasonable person would . . . construe such acts as having been designed to drive out the entire family, not just one member.

*Id.* at 853.

In this case, however, the relationship between the challenged conduct and the alleged emotional injury is much more attenuated than it was in *Whisby-Meyers*. The children in *Whisby-Meyers* suffered distress because the attack on their mother was, in effect, an attack on them, which terrified and demoralized them. *Id.* at 849, 853. Helen and Nathan, on the other hand, say they suffered because they saw their mother suffering, not because defendants' alleged conduct injured them. In other words, Helen and Nathan were distressed because they witnessed the effect of defendants' conduct, not because they were victims of it. That sort of distress is not the kind of particularized and concrete injury necessary to give them standing for their FHA claims. *See Wilson*

5

*v. Glenwood Intermountain Props., Inc.*, 98 F.3d 590, 596 (10th Cir. 1996) (ordering dismissal, on standing grounds, of FHA suit challenging ads for gender-segregated student housing because plaintiffs, who were not students, "were at most 'concerned bystanders' . . . . [whose] claims of injury . . . [were] purely abstract" (quotation omitted)). *Cf. Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982) (stating that "the psychological consequence . . . produced by observation of conduct with which one disagrees, . . . is not an injury sufficient to confer standing under Art. III").

That does not necessarily mean, however, that plaintiffs do not have Article III standing to pursue their state law claims. If defendants actually violated one of plaintiff's state-law rights, that violation by itself is sufficient to satisfy the Article III injury requirement. *FMC Corp. v. Boesky*, 852 F.2d 981, 993 (7th Cir. 1988) ("[E]ven in the absence of a specific finding that FMC was injured by the misappropriation of its confidential business information, FMC sufficiently alleged the violation of a state-law right that in itself would suffice to satisfy Article III's injury requirement."). Consequently, if plaintiffs have sufficiently alleged a claim for breach of fiduciary duty under the Illinois Condominium Act, they have Article III standing to pursue it.

Section 18.4 of that Act requires officers and members of a condominium board to "exercise the care required of a fiduciary of the unit owners." 765 Ill. Comp. Stat. 605/18.4. Nathan does not allege that he is an owner of any of the Shoreline Towers units. He contends, however, that he has standing because defendants are required by the Act to abide by Shoreline Towers's declaration and the following provision of the declaration creates a fiduciary relationship between the association and the condominiums' occupants:

> [T]he Board may adopt such reasonable rules and regulations, not inconsistent herewith, as it may deem advisable for the maintenances [sic], administration, management, operation, use, conservation and beautification of the Property, and for

6

the health, comfort, safety and general welfare of the Unit Owners and Occupants of the Property.

(Pls.' Resp. Shoreline Towers & Frischholz's Mot. Dismiss ¶ 46 (quoting Declaration Art. IV.2(s)).)

The Court disagrees. Though it is true that the board is required to comply with the condominium's declaration, *see* 765 Ill. Comp. Stat. 605/18.4, Nathan has not shown that the declaration in this case creates a fiduciary relationship between the board and the unit occupants. The provision he identifies simply vests the board with rule-making powers. It does not place the board in the position of trust and confidence with respect to the unit occupants that is indicative of a fiduciary relationship. *See Maercker Point Villas Condo. Ass'n v. Szymski*, 655 N.E.2d 1192, 1194 (Ill. App. Ct. 1995) ("A fiduciary or confidential relationship exists where, by reason of friendship, agency, or business association and experience, trust and confidence are reposed by one person in another who, as a result, gains an influence and superiority over him." (quotation omitted)). In short, Nathan has not alleged that he has any rights under section 18.4 of the Act. He does not, therefore, have Article III standing to pursue his breach of fiduciary duty claim.

Helen, on the other hand, does have such standing. It is undisputed that Lynne gave her an ownership interest in unit 12R on June 22, 2006, six weeks before the allegedly retaliatory legal fees were assessed against the unit. (*See* Pls.' Resp. Shoreline Towers & Frischholz's Mot. Dismiss, Ex. L, Declaration, Art. XV ("Costs incurred by the Association for the enforcement of Rules and Regulations including . . . legal fees . . . will be charged to the Unit owner." ); *id.*, Ex. M, 6/22/06 Quit Claim Deed; *id.*, Ex. S, 8/1/06 Account Statement Unit 12R.) As a result, when the board assessed the fees, it had a duty "to act in good faith with due regard to [Helen's] interests." *Wolinsky v. Kadison*, 449 N.E.2d 151, 157 (Ill. App. Ct. 1983). Therefore, she has standing to sue for their alleged breach of that duty.

**Merits**

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Wolin-Levin and Schingoethe argue that the FHA claim Lynn asserts against them must be dismissed because she does not, and cannot, allege that they cited her for the rules violations, conducted the hearing or assessed the fine and fees. *See* 42 U.S.C. § 3617 (making it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected" by the FHA). Lynne alleges, however, that Schingoethe is an agent of Wolin-Levin, she supervised Cotton-Collins in her capacity as Wolin-Levin's agent, and in that capacity she instructed Cotton-Collins to "interfere[] and direct[] [Shoreline Towers] building staff to interfere with and interrupt [Lynne's] use" of the hospitality room in retaliation for Lynne's exercise of her rights under the FHA. (*See* Am. Compl. ¶¶ 9-15, 24, 26.) Those allegations are sufficient to state a claim for violation of section 3617 against Wolin-Levin, Schingoethe and Cotton-Collins.[2]

---

[2]Defendants say that Schingoethe cannot be held liable for Cotton-Collins's alleged actions because Cotton-Collins is not employed by Wolin-Levin or supervised by Schingoethe. Their support for that argument, however, is an affidavit of Cotton-Collins's, evidentiary matter that the Court cannot consider when deciding a Rule 12(b)(6) motion to dismiss. *See* Rule 12(b) ("If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.")

8

Defendants' next argument is that Lynne's FHA claim is barred by res judicata. "The doctrine of res judicata bars relitigation of claims that were or could have been asserted in an earlier proceeding." *D & K Props. Crystal Lake v. Mut. Life Ins. Co. of N.Y.*, 112 F.3d 257, 259 (7th Cir. 1997). A plaintiff will be barred from asserting a claim if it "shares three elements with an earlier action: (1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits." *Id.* If "the prior action was brought in federal court, federal rules of res judicata apply." *Barnett v. Stern*, 909 F.2d 973, 977 (7th Cir. 1990).

Though the parties to this suit and the previous one ("*Bloch I*") are the same, that is the only element of res judicata that is satisfied in this case. The cause of action Lynne asserts in this suit is not the same as the one she asserted in *Bloch I*. In *Bloch I*, Lynne alleged that defendants had discriminated against her on the basis of her religion by prohibiting her from placing a Mezuzah on her door and retaliated against her when she complained. (*See generally* Pls.' Resp. Shoreline Towers & Frischholz's Mot. Dismiss, Ex. F, Second Am. Compl. *Bloch I*.)[3] In this case, she claims that defendants retaliated against her for filing *Bloch I* by fining her for illusory rules violations. Moreover, because it was not presented to him in *Bloch I*, Judge Lindberg did not issue a final judgment on the merits of this retaliation claim.

Even if Lynne did not actually assert her current retaliation claim in *Bloch I*, defendants say she should still be barred from litigating it because she could have raised it in the previous suit. Because the allegedly retaliatory activity occurred before Judge Lindberg granted summary judgment to defendants in *Bloch I*, defendants say Lynne should have amended the complaint in that suit to include her retaliation claim.

---

[3] The Court can consider matters that are subject to judicial notice in deciding a Rule 12(b)(6) motion to dismiss, including "proceedings in other courts . . . [that] have a direct relation to matters at issue" in the case. *Green v. Warden*, 699 F.2d 364, 369 (7th Cir. 1983).

Again, the Court disagrees. Lynne alleges that the board did not impose the allegedly retaliatory fine and fees on her until August 1, 2006. (Am. Compl. ¶ 26.) By that time, the summary judgment motion defendants had filed in *Bloch I* was fully briefed and eight days away from its ruling date. (*See* Docket Sheet *Bloch I*, No. 05 C 5379.) Given the posture of the proceedings, any motion to amend Lynne might have made would undoubtedly have been denied. Under the circumstances, the Court holds that the doctrine of res judicata does not bar Lynne from pursuing her FHA retaliation claim in this suit. *See Green v. Ill. Dep't of Transp.*, 609 F. Supp. 1021, 1026 (N.D. Ill. 1985) (stating that there is "no clear rule prescribing how to deal" with "conduct . . . [that] occur[s] after the filing of the first complaint, but before judgment").

Finally, Shoreline Towers and Frischholz contend that Lynne and Helen's Condominium Act claims should be dismissed because their complaint does not adequately allege that defendants breached the fiduciary duties imposed on them by that Act. According to the amended complaint, defendants cited, tried and fined Lynne for rules violations that were "fabricated and without foundation." (Am. Compl. ¶ 33.) If that is true, and for purposes of this motion we must assume that it is, defendants breached their fiduciary duties. *See Salomon v. Astor Vill. Condo. Ass'n*, No. 1-99-1639, 2001 WL 664404, at *3 (Ill. App. Ct. June 4, 2001) (stating that board is not liable for breach of fiduciary "when it properly exercises business judgment in interpreting its own declaration," but discriminatory enforcement of rules or apportionment of benefits does not constitute sound business judgment).

## Conclusion

For the reasons set forth above, the motions to dismiss of Shoreline Towers, Frischholz, Wolin-Levin, Schingoethe and Cotton-Collins [doc. nos. 15 & 42] are granted in part and denied in part. The motions are granted with respect to the FHA claims asserted by Helen and Nathan, and the Illinois Condominium Act claim asserted by Nathan, which are dismissed without prejudice for lack of subject matter jurisdiction. In all other respects, the motions are denied. Moreover, because the Court did not consider them in ruling on this motion, Shoreline Towers and Frischholz's motions to strike paragraphs one through nine of plaintiffs' response [doc. nos. 21 & 30] are stricken as moot.

**SO ORDERED.**  ENTERED: 5/11/07

HON. RONALD A. GUZMAN
**United States District Judge**

11