IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LYNNE BLOCH and HELEN BLOCH, | ) ) ) |
| Plaintiffs, | ) ) 06 C 4472 |
| v. | ) ) ) Judge Ronald A. Guzmán |
| EDWARD FRISCHHOLZ, and SHORELINE TOWERS CONDOMINIUM ASSOCIATION, an Illinois not-for-profit corporation, WOLIN-LEVIN, INC., an Illinois corporation, SHARON SCHINGOETHE, and BELINDA COTTON-COLLINS, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Lynne and Helen Bloch[1] have sued Edward Frischholz, Sharon Schingoethe, Belinda Cotton-Collins, Wolin-Levin, Inc. and the Shoreline Towers Condominium Association ("Shoreline") for their alleged violations of the Fair Housing Act, 42 U.S.C. § 3617, and the Illinois Condominium Act, 765 Ill. Comp. Stat. 605/18.4. The case is before the Court on defendants' motion pursuant to Federal Rule of Civil Procedure ("Rule") 56(c) for summary judgment and to strike portions of plaintiff's fact statement. For the reasons set forth below, the Court grants the summary judgment motion as to the federal claims, declines to exercise supplemental jurisdiction over the state law claims, and dismisses as moot the motion to strike.

---

[1] The Court dismissed the claims of a third plaintiff, Nathan Bloch, in May 2007. (*See* Mem. Op. & Order of 5/11/07.)

## Facts

Shoreline is a condominium association located at 6301 North Sheridan Road in Chicago. (Defs.' LR 56.1(a) Stmt. ¶ 1.) Frischholz is a Shoreline unit owner and the president of Shoreline's board of directors. (*Id.* ¶ 2.) Wolin-Levin, through its employee Schingoethe, manages Shoreline's property. (*Id.* ¶¶ 3-4.) Collins-Cotton is a Shoreline employee and its on-site property manager. (*Id.* ¶ 5.) Lynne Bloch and Helen Bloch are orthodox Jews who have ownership interests in Shoreline units. (*Id.* ¶¶ 6-7, 55.)

In September 2005, Lynne, Helen and Nathan Bloch filed suit against Shoreline and Frischholz, alleging that they had discriminated against plaintiffs because of their religion in violation of the FHA. *See Bloch v. Frischholz*, No. 05 C 5379 (N.D. Ill.), Docket Entry No. 1.

In December 2005, Lynne rented Shoreline's hospitality room for Sabbath services for her synagogue, Congregation Beth Shalom. (*See* Pls.' Resp. Defs.' LR 56.1(a) Stmt. ¶ 31; Pls.' Exs., Ex. D, Lynne Bloch Dep. at 8, 10.) Frischholz, whose unit is next to the hospitality room, complained to Cotton-Collins and Schingoethe that someone had covered the cross on his door during the Beth Shalom Sabbath services. (Pls.' Exs., Ex. B, Frischholz Dep. at 26-31.) Though defendants say that one tenant's interference with the religious object of another violates Shoreline's rules, they did not cite Lynne for any violations at that time. (Defs.' LR 56.1(a) Stmt. ¶ 31.)

Lynne once again rented the hospitality room for Sabbath services that were held on February 9, and 10, 2006. (*Id.* ¶¶ 32, 36.) However, on this occasion, unlike the last, Shoreline required her to make the rental request in writing and had its lawyer communicate its approval of the request to her. (Pls.' LR 56.1(b)(3) Stmt. ¶ 7; Lynne Bloch Am. Aff. ¶ 20.)

Shoreline contends that Lynne violated its rules on February 9, and 10, 2006 because she was not present at all times during the Sabbath services and because her guests did not sign in with building security, asked security personnel to leave their posts and blocked a resident's doorway. (Pls.' Exs.,

2

Ex. N, Letter from Hartwell to Lynne of 2/21/06.) Shoreline cited Lynne for these violations, adjudged her guilty of them after a hearing and assessed her fines and attorney's fees as a result. (*See id.*, Ex. O, 2/21/06 Hr'g Notice; *id.*, Ex. Q, 6/5/06 Notice of Decision.)

Lynne contends that defendants cited and fined her in retaliation for the FHA suit she and her children had filed against Shoreline and Frischholz in 2005.

## Discussion

To prevail on a summary judgment motion, "the pleadings, the discovery and disclosure materials on file, and any affidavits [must] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

### Federal Claims

In Counts 1, 4, 7 and 10 of the amended complaint, Lynne alleges that defendants Frischholz, Schingoethe, Cotton-Collins and Wolin-Levin cited and fined her in retaliation for her filing of the first FHA lawsuit.[2] The Seventh Circuit has yet to delineate the elements of a *prima facie* case of FHA retaliation. Other circuits, however, have held that plaintiffs must show that: (1) they engaged in statutorily protected activity; (2) defendants took adverse action against them; and (3) there is a causal

---

[2] Counts 2-3, 5-6, 8-9 and 11-12 are FHA retaliation claims asserted by Nathan and Helen Bloch, which the Court previously dismissed. (*See* Mem. Op. & Order of 5/11/07.)

3

connection between the two. *See, e.g., Neudecker v. Boisclair Corp.*, 351 F.3d 361, 363-64 (8th Cir. 2003) (per curiam); *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001) (same). It is not clear whether the Seventh Circuit would adopt that test or, as plaintiffs urge, use the test it applies to Title VII claims. *See Stone v. City of Ind.*, 281 F.3d 640, 644 (7th Cir. 2002) (stating that elements of Title VII retaliation claim are that plaintiffs engaged in protected activity, and defendants subjected plaintiffs, and not any otherwise similarly situated employee who did not complain, to adverse action even though plaintiffs were meeting their employer's legitimate expectations); (Pls.' Mem. Law Resp. Defs.' Mot. Summ. J. at 5.) Ultimately, however, it does not matter, because Lynne cannot satisfy either test.

To make a *prima facie* case, Lynne must offer evidence either that there is a causal connection between the first lawsuit and defendants' adverse treatment of her or that similarly situated tenants who did not file an FHA suit escaped such treatment. Lynne says she satisfies these elements because: (1) the citations occurred after she filed the first FHA lawsuit; (2) Lynne was the first tenant with whom defendants had communicated through counsel and against whom they assessed attorney's fees; (3) Lynne had previously held Sabbath services in the hospitality room without being citing for rules violations; and (4) a former Shoreline tenant, North Sheridan Hebrew Congregation ("North Sheridan"), a synagogue, held Sabbath services in the building without being cited for rules violations.

There are several problems with these "facts." First, many of them are drawn from Lynne's amended affidavit, which is rife with inadmissible statements. In it she states, for example, that the individual defendants: (1) "were made aware" that the February 2006 events were Jewish Sabbath services; (2) "were made aware" that before January 2006 the guests at the Sabbath services were signed into the building by the doorman and left the stairwell security door unlocked so they could observe Jewish customs; and (3) "knew" the Jewish Sabbath requirements. (*See* Lynne Bloch Am.

Aff. ¶¶ 10-13.) Lynne also says that North Sheridan "operated under the same religious constraints as Congregation Beth Shalom." (*Id.* ¶ 8.)

Lynne can only testify, however, as to matters of which she has personal knowledge. *See* Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). The record does not show that she has such knowledge about North Sheridan's religious practices or about the individual defendants' knowledge. Similarly, Lynne cannot testify about the facts of which the defendants "were made aware" because the conversations or documents through which defendants gleaned those facts are hearsay. *See* Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

Second, even the facts that are admissible do not suggest that there was a causal relationship between the 2005 lawsuit and the fines levied against Lynne in 2006. Lynne says Shoreline's failure to "punish" her for her guests' conduct during previous Sabbath services and its decision to communicate with her through a lawyer and assess attorneys' fees against her (Lynne Am. Aff. ¶¶ 9, 20), suggest causation. In reality, none of those facts is relevant to that issue.

According to the record, the only other time Lynne used the hospitality room for Sabbath services was on December 9, and 10, 2005, almost three months *after* she and her children had filed the first suit against Shoreline and Frischholz. *See Bloch v. Frischholz*, No. 05 C 5379 (N.D. Ill.), Docket Entry No. 1 (showing complaint filed September 16, 2005); (Pls.' Resp. Defs.' LR 56.1(a) Stmt. ¶ 31). If, as Lynne says, the people who attended the December 2005 services engaged in the same conduct as those who attended the February 2006 services, Shoreline's failure to cite her for rules violations in connection with the December services, though the first FHA suit was already pending, vitiates the inference that it was the lawsuit that caused them to do so later.

Similarly, even if Lynne was the first tenant with whom Shoreline communicated through counsel and against whom it assessed attorneys' fees, those facts bear upon what defendants did, *i.e.*, the adverse action element, not why they did so, *i.e.*, the causation element. Consequently, even if the admissible facts are true, they shed no light on the last element of the *prima facie* case.

Finally, the last "fact" asserted by Lynne, that North Sheridan committed the same rules violations in connection with its Sabbath services but was not cited by Shoreline for doing so (Pls.' Mem. Law Resp. Defs.' Mot. Summ. J. at 4-6), has no support in the record. Neither Lynne nor anyone else testified that North Sheridan violated any of Shoreline's rules, let alone the rules implicated by this case, or that Shoreline ignored the violations. Rather, Lynne baldly asserts – without any apparent foundation – that the congregants of North Sheridan observe the same customs as those of Beth Shalom and that Shoreline "accommodated" North Sheridan's religious needs. (*See* Lynn Am. Aff. ¶ 8.)

That assertion supports the inference that North Sheridan violated Shoreline's rules with impunity only if it is impossible simultaneously to observe Jewish Sabbath customs and Shoreline's regulations. That is not the case, as defendant Schingoethe, who is also Jewish, testified. According to her undisputed testimony, orthodox Jews can observe their religious customs and still comply with Shoreline's security regulations by designating a non-orthodox person to sign them into the building and using the building's staircase without propping open its security door. (Pls.' Exs., Ex. F, Schingoethe Dep. at 33-36.) Because the undisputed facts establish that it is possible to observe Jewish Sabbath customs without violating Shoreline's regulations, the record does not support the inference that Shoreline treated North Sheridan more favorably than it treated Lynne.

In short, Lynne has not raised a triable fact issue as to whether the 2005 FHA lawsuit caused Shoreline to levy fines and fees against her in 2006 or whether another similarly situated tenant who did not engage in protected activity received more favorable treatment. Consequently, she has not

6

made a *prima facie* case on her FHA retaliation claims. Defendants' motion for summary judgment on those claims is, therefore, granted.

### State Claims

Having dismissed all the federal claims in this suit, the Court declines to exercise its supplemental jurisdiction over the state law claims plaintiffs assert in Counts 13 and 14 of the amended complaint. *See* 28 U.S.C. § 1367(c)(3).

### Conclusion

For the reasons set forth above, there is no genuine issue of material fact on the federal claims plaintiffs assert against defendants in Counts 1, 4, 7 and 10 of the amended complaint. Defendants' motion for summary judgment [doc. no. 66] as to those counts is, therefore, granted. The Court declines to exercise supplemental jurisdiction over the state law claims asserted in Counts 13 and 14 of the amended complaint, which are dismissed without prejudice to refiling in state court. Moreover, because the Court did not rely on the challenged facts in resolving this motion, defendants' motion to strike portions of plaintiffs' Local Rule 56.1 Statement [doc. no. 78] is dismissed as moot. This case is terminated.

SO ORDERED.  ENTERED: 1/24/08

HON. RONALD A. GUZMAN
United States District Judge